# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF GEORGIA
## SAVANNAH DIVISION

| | |
|---|---|
| WILLIAMS & HAUPT, P.C., individually and on behalf of a class of similarly situated businesses and individuals, | Case No.: |
| Plaintiff, | **COMPLAINT-CLASS ACTION** |
| v. | **DEMAND FOR JURY TRIAL** |
| CENTURY BANK, CENTURY BANK AND TRUST COMPANY, COLONY BANK, COLONY BANKCORP, INC., FARMERS & MERCHANTS BANK OF SOUTH CAROLINA, FIRST CHATHAM BANK, OPTUS BANK, SOUTH ATLANTIC BANK, SYNOVUS BANK, TRUIST FINANCIAL CORP., TRUIST BANK, UNITED COMMUNITY BANK, INC., AND UNITED COMMUNITY BANK (GEORGIA). | |
| Defendants. | |

Plaintiff Williams & Haupt, P.C. ("Plaintiff" or "Haupt") brings this class action complaint on behalf of itself and those similarly situated against defendants Century Bank, Century Bank and Trust Company, Colony Bank, Colony Bankcorp, Inc., Farmers & Merchants Bank of South Carolina, First Chatham Bank, Optus

Bank, South Atlantic Bank, Synovus Bank, Truist Financial Corp., Truist Bank, United Community Bank, Inc., and United Community Bank (Georgia) (hereinafter "Defendants"), to obtain fees owed to Plaintiff as a result of its work as an agent to assist small business borrowers (the "Applicants") in getting federally guaranteed loans through the Paycheck Protection Program ("PPP"), a federal program implemented to provide small businesses with loans to combat the economic impact of COVID-19. Federal regulations require Defendants to pay Plaintiff and the proposed Class for their work as agents who facilitated loans between Defendants and small businesses. Despite precise regulatory requirements stating that agent fees are owed to Plaintiff, Defendants have failed to pay Plaintiff and the Class Members. Instead, Defendants have kept the agent fees for themselves. Plaintiff alleges the following based upon its knowledge and upon information and belief, including investigations conducted by its attorneys.

## I. PARTIES

1.      Plaintiff, Williams & Haupt, P.C. ("Haupt") is a professional corporation, organized and authorized to do business, and doing business, in the State of Georgia since June 1976. John D. Haupt is the owner and is a licensed CPA in good standing since 1976. Haupt is located in Savannah, Georgia.

2.      At all relevant times, Century Bank ("Century Bank") is a

Massachusetts chartered bank and is headquartered in Medford, Massachusetts. Century Bank is a subsidiary of Century Bank and Trust Company and conducts substantial business within this District.

3.     At all relevant times, Century Bank and Trust Company ("Century BTC") is a Massachusetts corporation and is headquartered in Medford, Massachusetts. Century BTC is the bank holding company for Century Bank and conducts substantial business within this District.

4.     At all relevant times, Colony Bank ("Colony Bank") is a Georgia chartered bank and is headquartered in Fitzgerald, Georgia. Colony Bank conducts substantial business within this District.

5.     At all relevant times, Colony Bankcorp, Inc. ("Colony Bankcorp") is a corporation, the bank holding company for Colony Bank, and is headquartered in Fitzgerald, Georgia. Colony Bankcorp conducts substantial business within this District.

6.     At all relevant times, Farmers & Merchants Bank of South Carolina ("Farmers & Merchants Bank") is a South Carolina chartered bank and is headquartered in Holly Hill, South Carolina. Farmers & Merchants Bank conducts substantial business within this District.

7.     At all relevant times, First Chatham Bank ("First Chatham Bank") is a

3

Georgia chartered bank and is headquartered in Savannah, Georgia. First Chatham Bank conducts substantial business within this District.

8.     At all relevant times, Optus Bank ("Optus Bank") is a South Carolina chartered bank and is headquartered in Columbia, South Carolina. Optus Bank conducts substantial business within this District.

9.     At all relevant times, South Atlantic Bank ("South Atlantic Bank") is a is a South Carolina chartered bank and is headquartered in Myrtle Beach, South Carolina. South Atlantic Bank conducts substantial business within this District.

10.     At all relevant times, Truist Financial Corp., ("Truist") is a North Carolina corporation and is headquartered in Charlotte, North Carolina. Through its subsidiaries, Truist conducts substantial business within this District. In December 2019, BB&T Corporation and SunTrust Banks, Inc. merged to form Truist.

11.     At all relevant times, Truist Bank ("Truist Bank") is a North Carolina bank and is headquartered in Charlotte, North Carolina. Truist Bank conducts substantial business within this District.

12.     At all relevant times, Defendant Synovus Bank ("Synovus") is a Georgia state chartered bank and is headquartered in Columbus, Georgia. Synovus conducts substantial business within this District.

13.     At all relevant times, Defendant United Community Bank, Inc.

4

("UCB") is a Georgia corporation and is headquartered in Blairsville, Georgia. UC Bank conducts substantial business within this District, as well as through its subsidiary United Community Bank (Georgia).

14. At all relevant times, Defendant United Community Bank (Georgia) ("UC Bank") is a Georgia chartered bank and is headquartered in Blairsville, Georgia. UC Bank conducts substantial business within this District.

15. In this Complaint, when reference is made to any act of any Defendant, such shall be deemed to mean that officers, directors, agents, employees, or representatives of the Defendant named in this lawsuit committed or authorized such acts, or failed and omitted to adequately supervise or properly control or direct their employees while engaged in the management, direction, operation or control of the affairs of the Defendant and did so while acting within the scope of their employment or agency.

## II.  JURISDICTION AND VENUE

16. The Court has original jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. §1332(d), because this is a class action in which (1) at least some members of the proposed Class have different citizenship from Defendant(s); (2) the proposed class consists of more than 100 persons or entities; and (3) the claims of the proposed members of the Class exceed $5,000,000 in the

aggregate.

17.     This Court also has original jurisdiction over this action under 28 U.S.C. §1331 because the action arises under the laws of the United States, including the Coronavirus Aid, Relief, and Economic Security Act, the CARES Act (P.L. 116-136), and the SBA Regulations (as defined below).

18.     This Court has personal jurisdiction over Defendants because Defendants do business in this District, and a substantial number of the events giving rise to the claims alleged herein took place in this District.

19.     The venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because Plaintiff's principal place of business is located in this District, and a substantial part of the events or omissions giving rise to the alleged claims occurred in this District. Plaintiff, on behalf of its clients, applied for the PPP loans while in this District and Defendants, marketed, promoted, and took applications for the PPP loans in this District.

/ /

## III.   <u>FACTUAL ALLEGATIONS</u>

### *Background*

20.     On January 21, 2020, the Center for Disease Control and Prevention ("CDC") confirmed the first U.S. case of a new coronavirus, known as COVID-19.

21.     On January 30, 2020, the World Health Organization ("WHO")

declared the COVID-19 outbreak to be a "public health emergency of international concern."

22.     On March 11, 2020, the WHO declared that the spread of COVID-19 had become a pandemic.

23.     On April 1, 2020, Governor Brian Kemp issued an executive Stay at Home Order in the State of Georgia to prevent the spread of COVID.

24.     On March 13, 2020, President Trump issued the Coronavirus Disease 2019 (COVID-19) Emergency Declaration applicable to the United States, which declared that the pandemic was of "sufficient severity and magnitude to warrant an emergency declaration for all states, territories and the District of Columbia."

25.     The Trump Administration expressly recognized that with the COVID-19 emergency, "many small businesses nationwide are experiencing economic hardship as a direct result of the Federal, State, and local public health measures that are being taken to minimize the public's exposure to the virus." *See Business Loan Program Temporary Changes; Paycheck Protection Program*, 13 CFR Part 120, Interim Final Rule (the "SBA PPP Final Rule").

26.     On March 25, 2020, in response to the economic damage caused by the COVID-19 crisis, the United States Senate passed the Coronavirus Aid, Relief, and Economic Security Act, the CARES Act (P.L. 116-136). The CARES Act was

passed by the House of Representatives the following day and signed into law by President Trump on March 27, 2020. This legislation included $377 billion in federally-funded loans to small businesses and a $500 billion governmental lending program, administered by the United States Department of Treasury ("Treasury") and the Small Business Administration ("SBA"), a United States government agency that provides support to entrepreneurs and small businesses.

27.     As part of the CARES Act, the Federal Government created a $349 billion loan program, referred to as the Paycheck Protection Program or PPP, temporarily adding a new product to the SBA's 7(a) Loan Program ("SBA 7(a) Program").

28.     The PPP provided small businesses with loans to be originated from February 15, 2020, through June 30, 2020. The PPP was created to provide American small businesses with eight-weeks[1] of cash-flow assistance and to allow a certain percentage of the loan to be forgiven if the loan is utilized to retain employees and fund payrolls. Although the loans are administered by the Treasury and backed by the Federal Government, the loans are funded by private lenders ("Lenders"), including banks and financial services firms, that review and approve PPP loan

---

[1] On June 5, 2020, the Paycheck Protection Program Flexibility Act of 2020 (Pub. L. 116-142), extended the eight-week period to twenty-four weeks.

applications.

29.     The Treasury announced on April 3, 2020, that small businesses and sole proprietors could fill out an application (the "Application") to apply and receive loans to cover their payroll and other expenses through approved SBA Lenders. Beginning on April 10, 2020, independent contractors and self-employed individuals could apply as well.[2]

30.     On April 24, 2020, President Trump signed the Paycheck Protection Program and Health Care Enhancement Act ("PPPEA"). The PPPEA added $310 billion in PPP funding, bringing the total PPP funds available to lend to $659 billion.

31.     On June 5, 2020, President Trump signed the Paycheck Protection Program Flexibility Act of 2020 ("Flexibility Act") (Pub. L. 116-142), which changes key provisions of the Paycheck Protection Program, including provisions relating to the maturity of PPP loans, the deferral of PPP loan payments, and the forgiveness of PPP loans. **The Flexibility Act did not change Defendants' statutory duty to pay Plaintiff the Agent Fees Plaintiff is owed**.

32.     The Treasury's Paycheck Protect Program (PPP) Information Sheet

---

[2] *Paycheck Protection Program (PPP) Information Sheet: Borrowers*, Dep't of Treasury (last visited, June 18, 2020), *https://home.treasury.gov/system/files/136/PPP--Fact-Sheet.pdf*

for Lenders[3] (the "PPP ISL"), consistent with the SBA PPP Final Rule (collectively, the "SBA Regulations"), describes a system to distribute the PPP loans that relies on established SBA Lenders – who approve and fund loan applicants – and the **addition** of independent agents ("PPP Agents") – who provide small businesses with the necessary assistance enabling them to apply for a PPP loan.

33.    Under the SBA Regulations, a PPP Agent "can be:

- An attorney;

- An accountant;

- A consultant;

- Someone who prepares an applicant's application for financial assistance and is employed and compensated by the applicant;

- Someone who assists a lender with originating, disbursing, servicing, liquidating, or litigating SBA loans;

- A loan broker; or,

- Any other individual or entity representing an applicant by conducting business with the SBA."[4]

---

[3] *Paycheck Protection Program (PPP) Information Sheet: Lenders*, Dep't of Treasury (last visited, June 18, 2020), https://home.treasury.gov/system/files/136/PPP%20Lender%20Information%20Fact%20Sheet.pdf?

[4] *Id.*

34.     Unlike the existing SBA 7(a) Program, the SBA Regulations expressly contemplate and encourage PPP Agents to assist small businesses with their Applications. The SBA Regulations allow for and set standards by which PPP Agents are to be paid for their work. **Specifically, the regulations require that PPP Agents be paid from a portion of the set fees provided to SBA Lenders for processing the PPP Loan.**

35.     Before the passage of the CARES Act, **lenders were not compensated** by the SBA for originating SBA 7(a) Loans. Under the newly enacted SBA Regulations for PPP loans, Lenders are **generously compensated** for processing PPP loans ("Lender Fees") based on the amount of the funded PPP loan. The SBA pays Lender Fees to Lenders who process PPP loans in the following amounts:

- Five percent (5%) for loans of not more than $350,000;

- Three percent (3%) for loans of more than $350,000 and less than $2,000,000; and

- One percent (1%) for loans of at least $2,000,000.[5]

36.     The CARES Act states, "**Agent fees will be paid by the lender out**

---
[5]  *85 FR 20816 (3)(d).*

**of the fees the lender receives from SBA**. Agents may not collect fees from the **borrower or be paid out of the PPP loan proceeds**. The total amount that an agent may collect from the lender for assistance in preparing an application for a PPP loan … may not exceed:

- One (1) percent for loans of not more than $350,000;

- 0.50 percent for loans of more than $350,000 and less than $2 million; and

- 0.25 percent for loans of at least $2 million."[6] (the "Agent Fees").

37.    Before the passage of the CARES Act, lenders and agents were **not** compensated by the SBA for originating SBA 7(a) Loans. That is why the CARES Act authorized the Treasury to establish limits on Agent Fees. The Treasury, "in consultation with the Secretary, **determined that the agent fee limits set forth above are reasonable based upon the application requirements and the fees that lenders receive for making PPP loans**."[7]

38.    In other words, when implementing the CARES Act, the Treasury determined that the best and quickest way to get the PPP loans to the small businesses was to establish **new** regulations where Lenders and PPP Agents work

---

[6] *85 FR 20816 (4)(c).*
[7] *Id. (Emphasis Added).*

together to quickly and efficiently process Applications. To incentivize this relationship, the Lender and Agent were to split the Federal Government fees approximately 80% to be retained by the Lender and 20% to be forwarded to the Agent.

39.     By assisting businesses in preparing their Applications for PPP funding, PPP Agents play a critical role in fulfilling the goals of the CARES Act and ensuring adherence to the United States Congress's legislative intent. Indeed, the Senate directed the Treasury to "**issue guidance to <u>lenders and agents</u> to ensure that the processing and disbursement of covered loans** *prioritizes small business concerns and entities in underserved and rural markets, including veterans and members of the military community, small business concerns owned and controlled by socially and economically disadvantaged individuals…, women, and businesses in operation for less than 2 years*."[8]

40.     If not for the PPP Agents, tens of thousands of small businesses would have had difficulty or been unable to apply for PPP loans.

41.     **Nowhere in the CARES Act or the SBA Regulations does the Federal Government state, or even suggest, that Lender's approval is required**

---

[8] *CARES ACT, PL 116-136, March 27, 2020, 134 Stat 281. (Emphasis Added.)*

**in order for an Applicant to use an Agent.**

42.     Here, the Defendants are SBA approved Lenders. Plaintiff served as the PPP Agent for small businesses applying for the PPP loans provided by the Defendants and backed by the full faith and credit of the Federal Government.

43.     Despite Plaintiff's important (and successful) work in assisting the Applicants with their Applications, Defendants have not paid Plaintiff the regulatorily required Agent Fees but have, instead, retained the Agent Fee portion of the Lender Fees for themselves.

44.     Plaintiff has no other means of obtaining payment for the PPP Agent services it provided to its clients in securing their PPP loans. The SBA Regulations specifically prohibit PPP Agents from obtaining payment of any fees from the Applicants (i.e., Plaintiff's clients). The SBA Regulations require Plaintiff to be paid *only* by the Lender (i.e., Defendants) through the payment of a portion of the Lender Fees.

45.     Upon information and belief, apart from Plaintiff's clients, Defendants funded PPP loans for other businesses and failed to pay the statutorily required Agent Fees to members of the proposed Class that served as PPP Agents for other Applicants whose PPP loans were also funded by the Defendant.

46.     Adding validity to the need to file this action, on May 27, 2020, United

Community Bank, Inc. ("UCB"), received a civil investigative demand ("CID") from the U.S. Department of Justice (the "DOJ") pursuant to the False Claims Act. The CID directed UCB and its affiliated entities "to produce certain documents and respond to written interrogatories relating to the PPP loans approved by the Bank, the **Bank's non-payment of fees to agents of borrowers** and the Bank's policies related to payment or non-payment of agent fees."[9]

/ /

### Plaintiff Assisted its Clients with Applying for PPP Loans Under the CARES Act

47.     To assist its clients with preparing Applications for a PPP loan through Defendants, Plaintiff spent considerable time familiarizing itself with the CARES Act and the related SBA Regulations. In particular, relevant provisions include Section 1102, which permits the SBA to guarantee 100% of Section 7(a) loans under the PPP, and Section 1106 of the Act, which provides forgiveness of up to the full principal amount of qualifying loans guaranteed under the PPP.

48.     Complying with the SBA Regulations, Plaintiff assisted Applicants in the PPP Application process. As contemplated by the Federal Government, such

---

[9] *United Community Banks, Inc., Form 8-K* (last visited June 18, 2020), https://ir.ucbi.com/static-files/c7f8eaa8-d6bf-48e8-8ebc-a60c0bf3adea. UCB is a named defendant in another lawsuit based on the same allegations in the Northern District of Georgia, 1:20-cv-02026-LMM.

assistance contributed to the successful funding of the Applicants' PPP loans with a

Defendant.  Plaintiff assisted Applicants in the PPP Application process for loans

that were funded in the following approximate amounts from the respective

Defendants:

| Lender | Appx. Loan Totals | Number of loans |
|---|---|---|
| Century Bank/Century BTC | $ 27,000 | 1 |
| Colony Bank/Colony Bankcorp | $ 170,000 | 6 |
| Farmers & Merchants Bank | $ 38,000 | 1 |
| First Chatham Bank | $ 40,000 | 2 |
| Optus Bank | $ 323,000 | 4 |
| South Atlantic Bank | $ 483,000 | 2 |
| Synovus | $ 1,060,000 | 7 |
| Truist/Truist Bank | $ 1,002,000 | 3 |
| UCB/UC Bank | $ 143,000 | 6 |

49.     Based on the SBA Regulations, Plaintiff understood that it was not

allowed to charge its clients any fee relating to the Application process and that it

was only permitted to receive compensation from the PPP Agents' share of the

Lender Fees the Federal Government entrusted to the Lenders for the PPP Agents

benefit.

50.     Plaintiff further understood that it was not entitled to the Agent Fees

until the Lender received its Lender Fees. Based on information and belief,

Defendants have received the Lender Fees for the Applicants Plaintiff assisted,

thereby making the Agent Fees immediately due to Plaintiff.

51.     To participate in the PPP, "Lenders **must** comply with the applicable lender obligations set forth in this [SBA PPP Final Rule] . . . ."[10]

52.     Therefore, Plaintiff believed in good faith that Defendants would comply with the SBA Regulations and pay Plaintiff the statutorily required Agent Fees.

53.     However, Defendants violated the SBA Final Rule because they did not pay Plaintiff the Agent Fees the Federal Government entrusted to the Defendants for the benefit of the Plaintiff. Instead, Defendants have illegally retained the Agent Fee portion of the Lender Fees.

54.     Plaintiff made a demand for payment of the Agent Fees from Century Bank, Century Bank and Trust Company, Farmers & Merchants Bank of South Carolina, South Atlantic Bank, Truist Bank, Truist, United Community Bank, and United Community Bank (Georgia), and they refused to pay the Agent Fees. Plaintiff made a demand for payment of the Agent Fees from Colony Bank, Colony Bankcorp, First Chatham Bank and Optus Bank, and they failed to remit the Agent Fees in response to the demand, thereby refusing to pay the Agent Fees.

55.     Plaintiff has not submitted a request for Agent Fees to Defendant Synovus as it has publicly stated that it is not paying Agent Fees, and as such, a

---

[10] *85 FR 20812 (1). (Emphasis Added).*

17

demand for payment to Defendant Synovus is futile.

56.     Defendants, as Lenders under the PPP, lack any legal authority under the SBA Regulations to withhold payment of the Agent Fees to Plaintiff.

57.     As a result of Defendants' unlawful actions, Plaintiff and the Class have suffered financial harm by being deprived of the statutorily mandated compensation for the professional services they provided in their critical role as a PPP Agent, assisting Applicants in the preparation of their PPP application. Defendants barred Plaintiff from receiving compensation for their role as PPP Agents in the PPP process, which role resulted in significant benefits to both small businesses and the Lenders.

/ /

## IV. <u>CLASS ACTION ALLEGATIONS</u>

58.     Plaintiff brings this action on behalf of itself, and all other similarly situated Class members pursuant to Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure and seeks certification of the following Nationwide Class:

> All Agents who assisted a business in preparing an Application for a PPP loan pursuant to the CARES Act (the "Nationwide Class").

59.     To the extent that a Nationwide Class is not certified, in the alternative, Plaintiff brings this action on behalf of itself, and all other similarly

situated Class members pursuant to Rule 23(a), (b)(2), and (b)(3) of the Federal

Rules of Civil Procedure and seeks certification of the following Statewide Class:

> All Agents who assisted a business in Georgia in preparing an
> Application for a PPP loan pursuant to the CARES Act (the "Statewide
> Class").

The Statewide and Nationwide Class may hereafter be referred to as the "Class".

60.     For purposes of the Class definition, the term "Agent" has the same

meaning as an "agent" under the SBA Regulations.

61.     Plaintiff reserves the right to expand, limit, modify, or amend this

Class definition, including the addition of one or more subclasses, in connection with

Plaintiff's motion for class certification, or any other time, based upon, *inter alia*,

changing circumstances and/or new facts obtained during discovery.

62.     The following are excluded from the Class and/or Subclass: (a) any

Judge or Magistrate presiding over this action and members of their families; (b) the

officers, directors, or employees of Defendants; and (c) all persons who properly

execute and file a timely request for exclusion from the Class.

63.     *Numerosity:* The Class is composed of hundreds or thousands of

Agents (the "Class Members"), whose joinder in this action would be impracticable.

The disposition of their claims through this class action will benefit all Class

Members, the parties, and the courts.

64.     *Commonality and Predominance:* Common questions of law and fact affect the Class.   These questions of law and fact predominate over individual questions affecting individual Class Members and, include, but are not limited to, the following:

a.  Whether Plaintiff is an "agent" as that term is defined by the Cares Act and relevant regulations;

b.  Whether Defendants were obligated to pay Plaintiff and the Class Agent Fees from the Lender Fees it received under the CARES Act;

c.  Whether Defendants failed to pay Agent Fees they were required to pay;

d.  Whether Class Members are entitled to damages; and if so, in what amount;

e.  Whether Defendants are likely to continue to mislead the public and Class Members and continue to violate SBA Regulations regarding paying Agents their earned fees under the CARES Act;

f.  Whether Plaintiff and Class Members are entitled to an award of reasonable attorney's fees, pre-judgment interest and costs of suit; and

g.  Whether Defendants were unjustly enriched by their practice of refusing to pay Agent Fees.

65.     *Superiority*: In engaging in the conduct described herein, Defendants have acted and/or failed to act on grounds generally applicable to Plaintiff and other Class Members. Such behavior requires the Court's imposition of uniform relief to ensure compatible standards of conduct toward Class Members. A class action is superior to all other available means for the fair and efficient adjudication of Plaintiff's and the Class Members' claims. Few, if any, Class Members could afford or would deem it economically reasonable to seek legal redress of the wrongs complained of herein on an individual basis. Absent a class action, Class Members would not likely recover, or have the chance to recover, and Defendants would be permitted to retain the fruits of their misdeeds. Any difficulties that might occur in the management of this proposed class action are insubstantial. See Fed. R. Civ. P. 23(b)(1)(A).

66.     *Typicality*: Plaintiff's claims are typical of, and are not antagonistic to, the claims of the other Class Members. Plaintiff and the Class Members have been injured by Defendants' uniform, unfair and unlawful practice of denying PPP Agent Fees, as alleged herein. The factual and legal basis of Defendants' liability to Plaintiff and each Class Member as a result of Defendants' actions are described herein.

67.     *Adequacy*: Plaintiff is an adequate representative of the Class because

it is a member of the Class, and Plaintiff's interests do not conflict with the interests of the other Class Members that Plaintiff seeks to represent. Plaintiff will fairly and adequately represent and protect the interests of the other Class Members. Plaintiff has retained counsel with substantial experience in litigating complex cases, including class actions. Both Plaintiff and its counsel will vigorously prosecute this action on behalf of the Class and have the financial ability to do so. Neither Plaintiff nor counsel has any interest adverse to other Class Members.

68.    Plaintiff is informed and believes that Defendants keep extensive computerized records of their loan applications through, *inter alia*, computerized loan application systems, and Federally-mandated record-keeping practices. Defendants have one or more databases through which all of the Applicants may be identified and ascertained, and it maintains contact information, including email and mailing addresses. From this information, the existence of the Class Members (i.e., the PPP Agent for the Applicant) can be determined, and thereafter, a notice of this action can be disseminated in accordance with due process requirements.

## V.  CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### Declaratory Relief

*(On Behalf of the Class Against All Defendants)*

69.     Plaintiff hereby incorporates by reference the foregoing allegations as if fully set forth herein.

70.     Plaintiff asserts this cause of action on behalf of itself and other Class Members.

71.     Plaintiff assisted its clients with the application process. Defendants failed to pay Agent Fees owed to Plaintiff as required by the SBA Regulations. Instead, they kept all of the origination and processing fees for themselves, in direct violation of the SBA Regulations.

72.     An actual controversy has arisen between Plaintiff and Defendants as to the Agent Fees owed to Plaintiff by Defendants. Upon information and belief, Defendants either deny that any Agent Fees are owed to Plaintiff or claim that only a fraction of the proper Agent Fees are owed.

73.     Plaintiff and the Class Members seek a declaration in accordance with SBA Regulations that that Defendants owe the Agent Fees to be paid out of the administrative fees paid to all Defendants, and that the collective Agent Fees should be deposited into a mutually agreeable fund or funds, within 60 days, to be distributed to the designee/Agent of each recipient of a PPP loan.

## SECOND CAUSE OF ACTION
### Unjust Enrichment

*(On Behalf of the Class Against All Defendants)*

74.     Plaintiff hereby incorporates by reference the foregoing allegations as if fully set forth herein.

75.     Plaintiff asserts this cause of action on behalf of itself and other Class Members.

76.     Plaintiff and Defendants did not have a legal contract but the Plaintiff and Class Members operated under the assumption that Defendants would follow the CARES Act and SBA Regulations and remit payment of the PPP Agent Fees as required by law.  Defendants held themselves out as offering PPP loans under the CARES Act and SBA Regulations and Plaintiff and Class Members were induced and encouraged to act as Agents for Defendants' loans.  Plaintiffs and Class Members reasonably expected and relied on Defendant operating within the law governing the loans requiring payment of the PPP Agent Fees.

77.     Plaintiff and Class Members conferred a benefit upon Defendants by serving as the Agent for the small businesses applying for the PPP loans to be lent by the Defendants and by facilitating the loan process between Lenders and applicants as required by the SBA Regulations.

78.     Defendants have been, and continue to be unjustly enriched, to the detriment and at the expense of the Class Members as a result of Defendants' wrongful withholding of Agent Fees owed to Plaintiff and the Class.

79.     Defendants have unjustly benefitted through the unlawful and wrongful collection of money from the Federal Government through the SBA funding PPP loan applications and continue to benefit to the detriment and at the expense of Plaintiff and Class Members by failing to remit that portion of the money collected that belongs to Plaintiff and Class members in the form of PPP Agent Fees.

80.     Accordingly, Defendants should not be allowed to retain the proceeds from the benefits conferred upon it by Plaintiff.   Equity requires that the Defendants remit the PPP Agent Fees to Plaintiffs and Class Members and that they be compensated for the benefit conferred on the Defendants by Plaintiff and Class Members.

81.     Therefore, Plaintiff seeks disgorgement of Defendants' unjustly acquired profits and other monetary benefits resulting from Defendants' unlawful conduct, and seek restitution for the benefit of the Plaintiff and Class Members, in a manner to be determined by the Court.

### THIRD CAUSE OF ACTION
### Conversion

*(On Behalf of the Class Against All Defendants)*

82.     Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

83.     Plaintiff asserts this cause of action on behalf of itself and other Class

Members.

84.     Plaintiff gained title in the property and/or the legal right of possession to the PPP Agent Fees upon approval and funding of the PPP loan, based on their assistance to their clients in the loan application process, as Agents.

85.     Defendants without legal claim, authorization, or approval appropriated, assumed, and exercised dominion over, the Plaintiff's and Class Members' PPP Agent Fees set out above.    Defendants continue to have actual possession of the PPP Agent Fees.

86.     Plaintiff has demanded the return of their Agent Fees, which Defendants have not done, or have refused to do (Century Bank, Century Bank and Trust Company, Farmers & Merchants Bank of South Carolina, South Atlantic Bank, Truist Bank, Truist, United Community Bank, Inc., United Community Bank (Georgia), Colony Bank, Colony Bankcorp, Inc., First Chatham Bank and Optus Bank), or Defendants have publicly stated that they intent to retain the Agent Fees (Synovus).

87.     Defendants converted Plaintiff's property for their own use and used Plaintiff's property to their own benefit and enrichment. Defendants' actions with respect to the PPP Fees are hostile to Plaintiff and Class Members ownership rights in the PPP Agent Fees and Defendants' interference with Plaintiff's and Class

Members' dominion and ownership over the PPP Agent Fees has proximately damaged Plaintiffs and Class Members.

88.     In the alternative, Defendants in their capacity as trustees and/or bailees of Plaintiff's Agent Fees have not, or have refused to, surrender or remit the Agent Fees to Plaintiff.  The PPP Agent Fees rightfully and lawfully belong to Plaintiff and the Class Members

89.     Accordingly, Defendants are liable to Plaintiff for the tort of conversion.

90.     As a direct and proximate result of Defendants' actions, Plaintiff has suffered financial injury in an amount to be proven at trial.

91.     Defendants have acted in bad faith and have caused Plaintiff unnecessary trouble and expense by failing to abide by the rule of law, including the CARES Act and SBA Regulations requiring payment of the PPP Agent Fees. Accordingly, pursuant to O.C.G.A. § 13-6-11, Plaintiff is entitled to recovery of their litigation expenses, including but not limited to their reasonable attorneys' fees.

92.     Defendants' actions show willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care, which would raise the presumption of conscious indifference to consequences, entitling Plaintiff to an award of punitive damages.

## FOURTH CAUSE OF ACTION
### Quantum Meruit

*(On Behalf of the Class Against All Defendants)*

93.     Plaintiff incorporate by reference the foregoing allegations as if fully set forth herein.

94.     Plaintiff asserts this cause of action on behalf of itself and other Class Members.

95.     Plaintiff and Class Members performed valuable service for the Defendants, including but not limited to, serving as the Agents for the small businesses applying for the PPP loans to be lent by the Defendants and by facilitating the loan process between Lenders and applicants as required and encouraged by the SBA Regulations.

96.     Plaintiff, in fact, expected that Defendants would pay them the Agent Fees for the costs and services incurred in preparing and submitted the loan applications upon approval or at least funding of the loan funding of each of their clients' loans under the CARES Act and PPP, as required by the SBA Regulations. Plaintiff and Class Members operated under the assumption that Defendants would follow the CARES Act and SBA Regulations and remit payment of the PPP Agent Fees as required by law. Defendants held themselves out as offering PPP loans under the CARES Act and SBA Regulations and Plaintiff and Class Members were

induced and encouraged to act as Agents for Defendants' loans.  Plaintiffs and Class Members reasonably expected and relied on Defendant operating within the law governing the loans requiring payment of the PPP Agent Fees.

97.    The Defendants requested the assistance of Plaintiff, or knowingly accepted Plaintiff's and Class Members service, including but not limited to, working with the Agents during the application process.

98.    Defendants' receipt and retention of the Agent Fees without compensating Plaintiff and Class Members would be unjust and contrary to law, including the CARES Act, PPP, and SBA Regulations.

99.    The Plaintiff is thus entitled to recover from Defendants the Agent Fees that are due to them under the law, including the CARES Act, PPP, and SBA Regulations.

***NOTICE ONLY OF***
**FIFTH CAUSE OF ACTION**
**Violation of Georgia's Fair Business Practices Act**
**(Ga. Code Ann. § 10-1-390, *et seq*.)**

*(On Behalf of the Class Against All Defendants)*

100.    Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

101.    Plaintiff plans to asserts this cause of action on behalf of itself and other Class Members after the requisite notice period has lapsed.

102.   Plaintiff intends to assert a claim under the Georgia Fair Business Practices Act ("Georgia FBPA"), which declares "[u]nfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce" to be unlawful.  See O.C.G.A. § 10-1-393(a), O.C.G.A. § 10-1-393(b).

103.   Plaintiff will make a demand in satisfaction of O.C.G.A. § 10-1-399, and they may amend this Complaint to assert claims under the Georgia FBPA once the required 30 days have elapsed.

104.   This cause of action is included for purposes of notice only and is not intended to actually assert a claim under the Georgia FBPA.

105.   Defendants are each a "person" as defined by the Georgia FBPA. O.C.G.A. § 10-1-392(a)(24).

106.   Defendants were, at all times material to the allegations herein, engaged in "trade or commerce" as defined by the Georgia FBPA.  O.C.G.A. § 10-1-392(a)(28).

107.   Although there are enumerated examples in the statute of acts or practices that are unfair or deceptive, the examples are provided "by way of illustration only[.]" O.C.G.A. § 10-1-393(a); O.C.G.A. § 10-1-393(b).

108.   Defendants were, at all times material to the allegations herein, engaged

in "consumer acts or practices" as defined by the Georgia FBPA because the PPP loans, the SBA Regulations, and the Defendants' lending under the CARES Act and PPP program were all "acts or practices intended to encourage consumer transactions" by ensuring business remained afloat and keeping consumers employed. O.C.G.A. § 10-1-392(a)(7). The purpose of this part shall be *to protect* consumers and *legitimate business enterprises* from unfair or deceptive practices in the conduct of any trade or commerce in part or wholly in the state. It is the intent of the [Georgia] General Assembly that such practices be swiftly stopped, and [the Georgia FBPA] shall be liberally construed and applied to promote its underlying purposes and policies." O.C.G.A. § 10-1-391.

109.   Defendants have violated the Georgia FBPA by undermining the Application process and the Agent Fees payment requirements.

110.   Defendants held themselves out as offering PPP loans under the CARES Act and SBA Regulations and Plaintiff and Class Members were induced and encouraged to act as Agents for Defendants' loans.   Plaintiffs and Class Members reasonably expected and reasonably relied on Defendant operating within the law governing the loans requiring payment of the PPP Agent Fees.   Defendants in fact did not comply with the CARES Act and SBA Regulations.

111.   Defendants engaged in lending to businesses under the CARES Act and

PPP program and thus were required to abide by obligations set forth in the SBA Regulations.

112.   Plaintiff, as well as all Class Members, engaged in helping clients apply for PPP loans with the understanding, which is consistent with the SBA Regulations, that while they were not permitted to charge their clients fees for their professional services in assisting in compiling the Applications, they would be compensated through the mandated Agent Fees from the Lenders.

113.   Defendants are well aware, or should have been well aware, of the mandated Agent Fees owed to the Agents under the SBA Regulations.

114.   Defendants knew or should have known, that many of their customers were not sophisticated enough and/or lacked the necessary accounting skills and/or did not maintain the required financial data, to be able to successfully apply for a PPP loan without the assistance of a Plaintiff and the Class Members.

115.   Defendants also knew or should have known, that their customers would seek the assistance, and in fact, did seek the assistance of PPP Agents like Plaintiff and the Class Members to assist them in applying for PPP loans with Defendants.

116.   Based on the assistance from the PPP Agents like Plaintiff and the Class Members, the loan customers successfully applied for PPP Loans with their lenders,

which were guaranteed by the SBA.

117.   As a result of these PPP loans, the SBA has paid the Defendants the processing fees that are owed to PPP lenders. These processing fees include the fees that are due and owing to PPP Agents, including Plaintiff and the Class Members, for their services.

118.   The Defendants obtained the services of and benefits provided by the Plaintiff to the Defendants' customers. As a result, Defendants have earned substantial PPP loan processing fees, but have refused to compensate the Plaintiff and Class the PPP Agent Fees as mandated by the SBA Regulations. Therefore, Defendants' refusal is an unfair and deceptive consumer act or practice.

119.   Through their unfair acts and practices, Defendants have improperly obtained fees from the Federal government at the expense of Plaintiff and the Class.

120.   Defendants' unfair practices occurred before and during the Application process when Plaintiff rendered services to its clients in anticipation of being paid the mandated Agent Fees by the Lenders, only to be denied all or a portion of the Agent Fees owed under the SBA Regulations.

121.   Defendants' unfair practices of refusing to pay the mandated Agent Fees and their failure to adhere to the SBA Regulations as to PPP loans are the proximate cause of Plaintiff's damages.

122.   These acts and practices were unfair because Defendants withheld monies owed to Plaintiff that were provided for pursuant to the SBA Regulations.

123.   By committing the acts and practices alleged above, Defendants engaged in unfair business practices within the meaning of O.C.G.A. § 10-1-393.

124.   Defendants' violations present a continuing risk to Plaintiff as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest in light of the purpose and nature of the PPP Loans and because the CARES Act expressly authorized the PPP loans for the benefit of the public, including Plaintiff.

125.   Plaintiff and the Class Members are entitled to equitable relief.

126.   Thus, pursuant to O.C.G.A. § 10-1-399, Plaintiff seeks that this Court cause Defendants to disgorge this money to Plaintiff and all Class Members, enjoin Defendants from continuing to violate the Georgia FBPA as discussed herein, and further order actual and statutory damages, attorneys' fees and expenses, treble damages, and punitive damages as permitted under the Georgia FBPA and applicable law, along with an award to Plaintiff of such other damages and relief this Court deems just and proper.

127.   Plaintiff, the Class, and members of the public will be harmed and/or denied an effective and complete remedy if such an order is not granted.

**SIXTH CAUSE OF ACTION**
**Violation of the CARES Act**

*(On Behalf of the Class Against All Defendants)*

128.   Plaintiff hereby incorporates by reference the foregoing allegations as if fully set forth herein.

129.   The CARES Act provides a stimulus package in response to the COVID-19 pandemic and includes the PPP, which assists small businesses seeking to maintain payroll and other authorized expenses.

130.   There is an implied cause of action arising under the CARES Act.

131.   The CARES Act, along with the SBA's Regulations, provides for the payment of Agent Fess to authorized representatives who assisted PPP loan applicants with their PPP Applications (i.e., PPP Agents consisting of the Plaintiff and the Class Members).

132.   In flagrant disregard for the law, Defendants have failed and/or refused to pay the Agent Fees to the Applicants' authorized representatives (i.e., PPP Agents consisting of the Plaintiff and the Class Members), and instead, kept the fees to enrich themselves.

133.   Plaintiffs and Class Members are PPP Agents under the CARES Act and the SBA Regulations and, therefore, are entitled to the Agent Fees they have earned. The Agent Fees have been paid to the Lenders by the Federal Government

and are to be paid by the Lenders to the Plaintiffs and Class Members as set forth in the CARES Act and the SBA Regulations.

134.    Nevertheless, Defendants refused to pay Plaintiffs and the Class Members the authorized Agent Fees.

135.    As a direct and proximate result of Defendants' failure and/or refusal to comply with the CARES Act and the Rule, Plaintiffs and the Class Members have suffered damages in excess of $5 million.

/ /

## SEVENTH CAUSE OF ACTION
### Violation of the SBA's 7(a) Loan Program, 15 U.S.C. § 636(a)

*(On Behalf of the Class Against All Defendants)*

136.    Plaintiff hereby incorporates by reference the foregoing allegations as if fully set forth herein.

137.    The PPP was added to the SBA's 7(a) loan program, which is designed to assist small businesses in obtaining financing.

138.    There is an implied cause of action arising under the SBA's 7(a) loan program, as applied through the CARES Act.

139.    The SBA Regulations provide for the payment of Agent Fees to authorized representatives that assisted PPP Applicants with their PPP Applications (i.e., PPP Agents consisting of the Plaintiff and the Class Members).

140.    In flagrant disregard for the law, Defendants have failed and/or refused to pay Agent Fees to Plaintiffs and the Class Members, and instead, have kept the fees to enrich themselves.

141.    As a direct and proximate result of Defendants' wrongful actions, Plaintiffs and the Class Members have suffered damages in excess of $5 million

/ /

# VI.  **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the Class, prays for the following relief:

1.    For an Order certifying the Class as defined above, appointing Plaintiff as Class representative for the Class, and appointing Plaintiff's counsel as Class counsel for the Class;

2.    For an Order declaring Defendants' actions to be unlawful;

3.    For a declaration in accordance with SBA guidance that approximately 19.14% of all administrative fees paid to all Defendants, should be deposited into a mutually agreeable fund or funds, within 60 days, to

be distributed to the designee/Agent of each recipient of a PPP loan;

4.      For equitable relief to Plaintiff and Class Members;

5.      For an award of all recoverable compensatory, statutory, and other damages sustained by Plaintiff and Class Members, and equitable relief including disgorgement, unjust enrichment, and all other available relief under applicable law;

6.      For an award of punitive damages pursuant to applicable law;

7.      For reasonable attorneys' fees and expenses as permitted by applicable statutes and law;

8.      For costs related to bringing this action;

9.      For pre and post-judgment interest as allowed by law; and

10.     Such further relief at law or in equity that this Court deems just and proper.


## VII.  <u>DEMAND FOR JURY TRIAL</u>

Plaintiff hereby demands a trial of its claims by a jury to the extent authorized by law.

DATED:  <u>July 20, 2020</u>                           */s/ Travis E. Lynch*
                                                  Travis E. Lynch
                                                          GA Bar No.:  162373
                                                          tlynch@hgdlawfirm.com
                                                  **HENINGER GARRISON DAVIS, LLC**
                                                  3621 Vinings Slope, Suite 4320
                                                  Atlanta, GA 30339
                                                  Telephone: 404-996-0867
                                                  Facsimile: 205-326-3332

                                                  James F. McDonough, III
                                                          GA Bar No.:  117088
                                                          jmcdonough@hgdlawfirm.com
                                                  Jonathan R. Miller
                                                          GA Bar No.: 507179
                                                          jmiller@hgdlawfirm.com
                                                  **HENINGER GARRISON DAVIS, LLC**
                                                  3621 Vinings Slope, Suite 4320
                                                  Atlanta, GA 30339
                                                  Telephone: 404-996-0869; -0863
                                                  Facsimile: 205-380-8076, 205-547-5506
                                                  *Pro Hac Vice Application in Process*

                                                  W. Lewis Garrison, Jr.
                                                          GA Bar No.: 286815
                                                          lewis@hgdlawfirm.com
                                                  **HENINGER GARTRISON DAVIS, LLC**
                                                  2224 1st Avenue North
                                                  Birmingham, Alabama 35203
                                                  Telephone:  (205) 326-3336
                                                  Facsimile:   (205) 326-3332
                                                  *Pro Hac Vice Application in Process*

                                                  **GERAGOS & GERAGOS, APC**

                                                  Mark J. Geragos
                                                  Ben J. Meiselas

Matthew M. Hoesly
644 South Figueroa Street
Los Angeles, California 90017
Telephone: (213) 625-3900
Facsimile: (213) 232-3255
*Pro Hac Vice Application in Process*


**GRAY LAW GROUP, INC.**

Michael E. Adler
26500 Agoura Road, #102-127
Calabasas, CA 91302
Telephone: (818) 532-2833
Facsimile: (818) 532-2834
*Pro Hac Vice Application in Process*


**DHILLON LAW GROUP INC.**

Harmeet K. Dhillon
Nitoj P. Singh
177 Post St., Suite 700
San Francisco, CA 94108
Telephone: (415) 433-1700
Facsimile: (415) 520-6593
*Pro Hac Vice Application in Process*

*Attorneys for Plaintiff and the
Proposed Class*