# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF GEORGIA
### SAVANNAH DIVISION

| | |
|---|---|
| WILLIAMS & HAUPT, P.C., individually and on behalf of a class of similarly situated businesses and individuals,<br><br>Plaintiff,<br><br>v.<br><br>CENTURY BANK OF GEORGIA, FARMERS & MERCHANTS BANK OF SOUTH CAROLINA, FIRST CHATHAM BANK, OPTUS BANK, SOUTH ATLANTIC BANK, UNITED COMMUNITY BANK, INC., AND UNITED COMMUNITY BANK (GEORGIA).<br><br><br>Defendants. | Case No.: 4:20-cv-00160-RSB-BKE<br><br>**FIRST AMENDED COMPLAINT-CLASS ACTION**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Williams & Haupt, P.C. ("Plaintiff" or "Haupt") brings this amended class action complaint on behalf of itself and those similarly situated against defendants Century Bank of Georgia ("Century Bank"), Farmers & Merchants Bank of South Carolina ("Farmers"), First Chatham Bank ("First Chatham"), Optus Bank ("Optus"), South Atlantic Bank ("South Atlantic"), United Community Bank, Inc. ("UCB"), and United Community Bank (Georgia) ("UC Bank," and collectively with UCB, "United") (collectively and hereinafter "Defendants"), to obtain fees owed to Plaintiff as a result of its work as an agent to assist small business borrowers (the "Applicants") in getting federally guaranteed loans through the Paycheck Protection Program ("PPP"), a federal program implemented to provide small businesses with loans to combat the economic impact of COVID-19. Federal regulations require Defendants to pay Plaintiff and the proposed Class for their work as agents who facilitated loans between Defendants and small

businesses. Despite precise regulatory requirements stating that agent fees are owed to Plaintiff, Defendants have failed to pay Plaintiff and the Class Members. Instead, Defendants have kept the agent fees for themselves. Plaintiff alleges the following based upon its knowledge and upon information and belief, including investigations conducted by its attorneys.

## I. PARTIES

1.      Plaintiff, Williams & Haupt, P.C. ("Haupt") is a professional corporation, organized and authorized to do business, and doing business, in the State of Georgia since June 1976. John D. Haupt is the owner and is a licensed CPA in good standing since 1976. Haupt is located in Savannah, Georgia.

2.      At all relevant times, Century Bank of Georgia ("Century Bank") is a Georgia bank and is headquartered in 215 E. Main Street, Cartersville, GA 30120.  Century Bank conducts substantial business within this District.

3.      At all relevant times, Farmers & Merchants Bank of South Carolina ("Farmers") is a South Carolina chartered bank and is headquartered in Holly Hill, South Carolina.  Farmers & Merchants Bank conducts substantial business within this District.

4.      At all relevant times, First Chatham Bank ("First Chatham") is a Georgia chartered bank and is headquartered in Savannah, Georgia.  First Chatham Bank conducts substantial business within this District.

5.      At all relevant times, Optus Bank ("Optus") is a South Carolina chartered bank and is headquartered in Columbia, South Carolina.  Optus Bank conducts substantial business within this District.

6.      At all relevant times, South Atlantic Bank ("South Atlantic") is a is a South Carolina chartered bank and is headquartered in Myrtle Beach, South Carolina.  South Atlantic

Bank conducts substantial business within this District.

7.     At all relevant times, Defendant United Community Bank, Inc. ("UCB") is a Georgia corporation and is headquartered in Blairsville, Georgia.  UC Bank conducts substantial business within this District, as well as through its subsidiary United Community Bank (Georgia).

8.     At all relevant times, Defendant United Community Bank (Georgia) ("UC Bank," and collectively with UCB, "United") is a Georgia chartered bank and is headquartered in Blairsville, Georgia.  UC Bank conducts substantial business within this District.

9.     In this Complaint, when reference is made to any act of any Defendant, such shall be deemed to mean that officers, directors, agents, employees, or representatives of the Defendant named in this lawsuit committed or authorized such acts, or failed and omitted to adequately supervise or properly control or direct their employees while engaged in the management, direction, operation or control of the affairs of the Defendant and did so while acting within the scope of their employment or agency.  When reference is made to Defendants, that reference shall be equivalent to individually naming Century Bank, Farmers, First Chatham, Optus, South Atlantic, and United, and any allegations toward Defendants are explicitly and individually targeted to each of Century Bank, Farmers, First Chatham, Optus, South Atlantic, and United.

## II.  JURISDICTION AND VENUE

10.     The Court has original jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. §1332(d), because this is a class action in which (1) at least some members of the proposed Class have different citizenship from Defendant(s); (2) the proposed class consists of more than 100 persons or entities; and (3) the claims of the proposed members of the Class exceed $5,000,000 in the aggregate.

11.     This Court also has original jurisdiction over this action under 28 U.S.C. §1331

because the action arises under the laws of the United States, including the Coronavirus Aid, Relief, and Economic Security Act, the CARES Act (P.L. 116-136), and the SBA Regulations (as defined below).

12.     This Court has personal jurisdiction over Defendants because Defendants do business in this District, and a substantial number of the events giving rise to the claims alleged herein took place in this District.

13.     The venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because Plaintiff's principal place of business is located in this District, and a substantial part of the events or omissions giving rise to the alleged claims occurred in this District. Plaintiff, on behalf of its clients, applied for the PPP loans while in this District and Defendants, marketed, promoted, and took applications for the PPP loans in this District.

### III. FACTUAL ALLEGATIONS

*Background*

14.     On January 21, 2020, the Center for Disease Control and Prevention ("CDC") confirmed the first U.S. case of a new coronavirus, known as COVID-19.

15.     On January 30, 2020, the World Health Organization ("WHO") declared the COVID-19 outbreak to be a "public health emergency of international concern."

16.     On March 11, 2020, the WHO declared that the spread of COVID-19 had become a pandemic.

17.     On April 1, 2020, Governor Brian Kemp issued an executive Stay at Home Order in the State of Georgia to prevent the spread of COVID.

18.     On March 13, 2020, President Trump issued the Coronavirus Disease 2019 (COVID-19) Emergency Declaration applicable to the United States, which declared that the pandemic was of "sufficient severity and magnitude to warrant an emergency declaration for all

states, territories and the District of Columbia."

19.     The Trump Administration expressly recognized that with the COVID-19 emergency, "many small businesses nationwide are experiencing economic hardship as a direct result of the Federal, State, and local public health measures that are being taken to minimize the public's exposure to the virus." *See Business Loan Program Temporary Changes; Paycheck Protection Program*, 13 CFR Part 120, Interim Final Rule (the "SBA PPP Final Rule").

20.     On March 25, 2020, in response to the economic damage caused by the COVID-19 crisis, the United States Senate passed the Coronavirus Aid, Relief, and Economic Security Act, the CARES Act (P.L. 116-136). The CARES Act was passed by the House of Representatives the following day and signed into law by President Trump on March 27, 2020. This legislation included $377 billion in federally-funded loans to small businesses and a $500 billion governmental lending program, administered by the United States Department of Treasury ("Treasury") and the Small Business Administration ("SBA"), a United States government agency that provides support to entrepreneurs and small businesses.

21.     As part of the CARES Act, the Federal Government created a $349 billion loan program, referred to as the Paycheck Protection Program or PPP, temporarily adding a new product to the SBA's 7(a) Loan Program ("SBA 7(a) Program").

22.     The PPP provided small businesses with loans to be originated from February 15, 2020, through June 30, 2020. The PPP was created to provide American small businesses with eight-weeks[1] of cash-flow assistance and to allow a certain percentage of the loan to be forgiven if the loan is utilized to retain employees and fund payrolls. Although the loans are administered

_____

[1] On June 5, 2020, the Paycheck Protection Program Flexibility Act of 2020 (Pub. L. 116-142), extended the eight-week period to twenty-four weeks.

by the Treasury and backed by the Federal Government, the loans are funded by private lenders ("Lenders"), including banks and financial services firms, that review and approve PPP loan applications.

23. The Treasury announced on April 3, 2020, that small businesses and sole proprietors could fill out an application (the "Application") to apply and receive loans to cover their payroll and other expenses through approved SBA Lenders. Beginning on April 10, 2020, independent contractors and self-employed individuals could apply as well.[2]

24. On April 24, 2020, President Trump signed the Paycheck Protection Program and Health Care Enhancement Act ("PPPEA"). The PPPEA added $310 billion in PPP funding, bringing the total PPP funds available to lend to $659 billion.

25. On June 5, 2020, President Trump signed the Paycheck Protection Program Flexibility Act of 2020 ("Flexibility Act") (Pub. L. 116-142), which changes key provisions of the Paycheck Protection Program, including provisions relating to the maturity of PPP loans, the deferral of PPP loan payments, and the forgiveness of PPP loans. **The Flexibility Act did not change Defendants' statutory duty to pay Plaintiff the Agent Fees Plaintiff is owed**.

26. The Treasury's Paycheck Protect Program (PPP) Information Sheet for Lenders[3] (the "PPP ISL"), consistent with the SBA PPP Final Rule (collectively, the "SBA Regulations"), describes a system to distribute the PPP loans that relies on established SBA Lenders – who approve and fund loan applicants – and the **addition** of independent agents ("PPP Agents") – who provide small businesses with the necessary assistance enabling them to apply for a PPP loan.

---

[2]  *Paycheck Protection Program (PPP) Information Sheet: Borrowers*, Dep't of Treasury (last visited, June 18, 2020), *https://home.treasury.gov/system/files/136/PPP--Fact-Sheet.pdf*

[3]  *Paycheck Protection Program (PPP) Information Sheet: Lenders*, Dep't of Treasury (last visited, June 18, 2020), https://home.treasury.gov/system/files/136/PPP%20Lender%20Information%20Fact%20Sheet.pdf?

27.     Under the SBA Regulations, a PPP Agent "can be:

- An attorney;

- An accountant;

- A consultant;

- Someone who prepares an applicant's application for financial assistance and is employed and compensated by the applicant;

- Someone who assists a lender with originating, disbursing, servicing, liquidating, or litigating SBA loans;

- A loan broker; or,

- Any other individual or entity representing an applicant by conducting business with the SBA."[4]

Under the definition of an "agent" under the PPP, each PPP loan issued by the Defendants presumably had an agent.

28.     Unlike the existing SBA 7(a) Program, the SBA Regulations expressly contemplate and encourage PPP Agents to assist small businesses with their Applications. The SBA Regulations allow for and set standards by which PPP Agents are to be paid for their work. **Specifically, the regulations require that PPP Agents be paid from a portion of the set fees provided to SBA Lenders for processing the PPP Loan.**

29.     Before the passage of the CARES Act, **lenders were not compensated** by the SBA for originating SBA 7(a) Loans. Under the newly enacted SBA Regulations for PPP loans, Lenders are **generously compensated** for processing PPP loans ("Lender Fees") based on the amount of the funded PPP loan. The SBA pays Lender Fees to Lenders who process PPP loans in

---

[4] *Id.*

the following amounts:

- Five percent (5%) for loans of not more than $350,000;

- Three percent (3%) for loans of more than $350,000 and less than $2,000,000; and

- One percent (1%) for loans of at least $2,000,000.[5]

30.     The CARES Act states, "**Agent fees will be paid by the lender out of the fees the lender receives from SBA**. Agents may not collect fees from the **borrower or be paid out of the PPP loan proceeds**. The total amount that an agent may collect from the lender for assistance in preparing an application for a PPP loan … may not exceed:

- One (1) percent for loans of not more than $350,000;

- 0.50 percent for loans of more than $350,000 and less than $2 million; and

- 0.25 percent for loans of at least $2 million."[6] (the "Agent Fees").

31.     Before the passage of the CARES Act, lenders and agents were **not** compensated by the SBA for originating SBA 7(a) Loans. That is why the CARES Act authorized the Treasury to establish limits on Agent Fees. The Treasury, "in consultation with the Secretary, **determined that the agent fee limits set forth above are reasonable based upon the application requirements and the fees that lenders receive for making PPP loans**."[7]

32.     In other words, when implementing the CARES Act, the Treasury determined that the best and quickest way to get the PPP loans to the small businesses was to establish **new** regulations where Lenders and PPP Agents work together to quickly and efficiently process

---

[5] *85 FR 20816 (3)(d).*

[6] *85 FR 20816 (4)(c).*

[7] *Id. (Emphasis Added).*

Applications. To incentivize this relationship, the Lender and Agent were to split the Federal Government fees approximately 80% to be retained by the Lender and 20% to be forwarded to the Agent.

33.     By assisting businesses in preparing their Applications for PPP funding, PPP Agents play a critical role in fulfilling the goals of the CARES Act and ensuring adherence to the United States Congress's legislative intent. Indeed, the Senate directed the Treasury to "**issue guidance to <u>lenders and agents</u> to ensure that the processing and disbursement of covered loans *prioritizes small business concerns and entities in underserved and rural markets, including veterans and members of the military community, small business concerns owned and controlled by socially and economically disadvantaged individuals…, women, and businesses in operation for less than 2 years*.**"[8]

34.     If not for the PPP Agents, tens of thousands of small businesses would have had difficulty or been unable to apply for PPP loans.

35.     **Nowhere in the CARES Act or the SBA Regulations does the Federal Government state, or even suggest, that Lender's approval is required in order for an Applicant to use an Agent.**

36.     Here, the Defendants are SBA approved Lenders. Plaintiff served as the PPP Agent for small businesses applying for the PPP loans provided by the Defendants and backed by the full faith and credit of the Federal Government.

37.     Despite Plaintiff's important (and successful) work in assisting the Applicants with their Applications, Defendants have not paid Plaintiff the regulatorily required Agent Fees but have, instead, retained the Agent Fee portion of the Lender Fees for themselves.

---

[8]  *CARES ACT, PL 116-136, March 27, 2020, 134 Stat 281. (Emphasis Added.)*

38.     Plaintiff has no other means of obtaining payment for the PPP Agent services it provided to its clients in securing their PPP loans. The SBA Regulations specifically prohibit PPP Agents from obtaining payment of any fees from the Applicants (i.e., Plaintiff's clients). The SBA Regulations require Plaintiff to be paid **only** by the Lender (i.e., Defendants) through the payment of a portion of the Lender Fees.

39.     Upon information and belief, apart from Plaintiff's clients, Defendants funded PPP loans for other businesses and failed to pay the statutorily required Agent Fees to members of the proposed Class that served as PPP Agents for other Applicants whose PPP loans were also funded by the Defendant.

40.     Adding validity to the need to file this action, on May 27, 2020, United Community Bank, Inc. ("UCB"), received a civil investigative demand ("CID") from the U.S. Department of Justice (the "DOJ") pursuant to the False Claims Act. The CID directed UCB and its affiliated entities "to produce certain documents and respond to written interrogatories relating to the PPP loans approved by the Bank, the **Bank's non-payment of fees to agents of borrowers** and the Bank's policies related to payment or non-payment of agent fees."[9]

### Plaintiff Assisted its Clients with Applying for PPP Loans Under the CARES Act

41.     To assist its clients with preparing Applications for a PPP loan through Defendants, Plaintiff spent considerable time familiarizing itself with the CARES Act and the related SBA Regulations. In particular, relevant provisions include Section 1102, which permits the SBA to guarantee 100% of Section 7(a) loans under the PPP, and Section 1106 of the Act, which provides forgiveness of up to the full principal amount of qualifying loans guaranteed under

---

[9] *United Community Banks, Inc., Form 8-K* (last visited June 18, 2020), https://ir.ucbi.com/static-files/c7f8eaa8-d6bf-48e8-8ebc-a60c0bf3adea. UCB is a named defendant in another lawsuit based on the same allegations in the Northern District of Georgia, 1:20-cv-02026-LMM.

the PPP.

42.     Complying with the SBA Regulations, Plaintiff assisted Applicants in the PPP Application process. As contemplated by the Federal Government, such assistance contributed to the successful funding of the Applicants' PPP loans with a Defendant.  Plaintiff assisted Applicants in the PPP Application process for loans that were funded in the following approximate amounts from the respective Defendants:

| Lender | Loan Totals | Number of loans | Lender Fee | Agent Fee |
|--------|-------------|-----------------|------------|-----------|
| Century Bank | $   27,600.00 | 1 | $   1,380.00 | $   276.00 |
| Farmers | $   38,883.00 | 1 | $   1,944.15 | $   388.83 |
| First Chatham | $   33,000.00 | 2 | $   1,650.00 | $   330.00 |
| Optus | $   323,229.00 | 4 | $  16,161.45 | $  3,232.29 |
| South Atlantic | $   483,200.00 | 2 | $  15,118.00 | $  2,571.50 |
| United | $   142,905.00 | 6 | $   7,145.25 | $  1,429.05 |

43.     Based on the SBA Regulations, Plaintiff understood that it was not allowed to charge its clients any fee relating to the Application process and that it was only permitted to receive compensation from the PPP Agents' share of the Lender Fees the Federal Government entrusted to the Lenders for the PPP Agents benefit.

44.     Plaintiff further understood that it was not entitled to the Agent Fees until the Lender received its Lender Fees. Based on information and belief, Defendants have received the Lender Fees for the Applicants Plaintiff assisted, thereby making the Agent Fees immediately due to Plaintiff.

45.     To participate in the PPP, "Lenders **must** comply with the applicable lender obligations set forth in this [SBA PPP Final Rule] . . . ."[10]

46.     Therefore, Plaintiff believed in good faith that Defendants would comply with the

---

[10] *85 FR 20812 (1). (Emphasis Added).*

SBA Regulations and pay Plaintiff the statutorily required Agent Fees.

47.     However, Defendants violated the SBA Final Rule because they did not pay Plaintiff the Agent Fees the Federal Government entrusted to the Defendants for the benefit of the Plaintiff. Instead, Defendants have illegally retained the Agent Fee portion of the Lender Fees.

48.     Plaintiff made a demand for payment of the Agent Fees from Century Bank, Farmers, South Atlantic, and United, and they refused to pay the Agent Fees.   Plaintiff made a demand for payment of the Agent Fees from First Chatham and Optus, and they failed to remit the Agent Fees in response to the demand, thereby refusing to pay the Agent Fees.

49.     Defendants, as Lenders under the PPP, lack any legal authority under the SBA Regulations to withhold payment of the Agent Fees to Plaintiff.

50.     As a result of Defendants' unlawful actions, Plaintiff and the Class have suffered financial harm by being deprived of the statutorily mandated compensation for the professional services they provided in their critical role as a PPP Agent, assisting Applicants in the preparation of their PPP application. Defendants barred Plaintiff from receiving compensation for their role as PPP Agents in the PPP process, which role resulted in significant benefits to both small businesses and the Lenders.

## IV.  CLASS ACTION ALLEGATIONS

51.     Plaintiff brings this action on behalf of itself, and all other similarly situated Class members pursuant to Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure and seeks certification of the following Nationwide Class:

> All Agents who assisted a business in preparing an Application for a PPP loan pursuant to the CARES Act (the "Nationwide Class").

52.     To the extent that a Nationwide Class is not certified, in the alternative, Plaintiff brings this action on behalf of itself, and all other similarly situated Class Members pursuant to

Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure and seeks certification of the following Statewide Class:

> All Agents who assisted a business in Georgia in preparing an Application for a PPP loan pursuant to the CARES Act (the "Statewide Class").

The Statewide and Nationwide Class may hereafter be referred to as the "Class".

53.     For purposes of the Class definition, the term "Agent" has the same meaning as an "agent" under the SBA Regulations.

54.     Plaintiff reserves the right to expand, limit, modify, or amend this Class definition, including the addition of one or more subclasses, in connection with Plaintiff's motion for class certification, or any other time, based upon, *inter alia*, changing circumstances and/or new facts obtained during discovery.

55.     The following are excluded from the Class and/or Subclass: (a) any Judge or Magistrate presiding over this action and members of their families; (b) the officers, directors, or employees of Defendants; and (c) all persons who properly execute and file a timely request for exclusion from the Class.

56.     *Numerosity:* The Class is composed of hundreds or thousands of Agents (the "Class Members"), whose joinder in this action would be impracticable. The disposition of their claims through this class action will benefit all Class Members, the parties, and the courts.

57.     *Commonality and Predominance:* Common questions of law and fact affect the Class.  These questions of law and fact predominate over individual questions affecting individual Class Members and, include, but are not limited to, the following:

    a.   Whether Plaintiff is an "agent" as that term is defined by the Cares Act and relevant regulations;

    b.   Whether Defendants were obligated to pay Plaintiff and the Class Agent Fees from

the Lender Fees it received under the CARES Act;

c.   Whether Defendants failed to pay Agent Fees they were required to pay;

d.   Whether Class Members are entitled to damages; and if so, in what amount;

e.   Whether Defendants are likely to continue to mislead the public and Class Members and continue to violate SBA Regulations regarding paying Agents their earned fees under the CARES Act;

f.   Whether Plaintiff and Class Members are entitled to an award of reasonable attorney's fees, pre-judgment interest and costs of suit; and

g.   Whether Defendants were unjustly enriched by their practice of refusing to pay Agent Fees.

58.   *Superiority*: In engaging in the conduct described herein, Defendants have acted and/or failed to act on grounds generally applicable to Plaintiff and other Class Members. Such behavior requires the Court's imposition of uniform relief to ensure compatible standards of conduct toward Class Members. A class action is superior to all other available means for the fair and efficient adjudication of Plaintiff's and the Class Members' claims. Few, if any, Class Members could afford or would deem it economically reasonable to seek legal redress of the wrongs complained of herein on an individual basis. Absent a class action, Class Members would not likely recover, or have the chance to recover, and Defendants would be permitted to retain the fruits of their misdeeds. Any difficulties that might occur in the management of this proposed class action are insubstantial. See Fed. R. Civ. P. 23(b)(1)(A).

59.   *Typicality*: Plaintiff's claims are typical of, and are not antagonistic to, the claims of the other Class Members. Plaintiff and the Class Members have been injured by Defendants' uniform, unfair and unlawful practice of denying PPP Agent Fees, as alleged herein. The factual

and legal basis of Defendants' liability to Plaintiff and each Class Member as a result of Defendants' actions are described herein.

60.    *Adequacy*: Plaintiff is an adequate representative of the Class because it is a member of the Class, and Plaintiff's interests do not conflict with the interests of the other Class Members that Plaintiff seeks to represent. Plaintiff will fairly and adequately represent and protect the interests of the other Class Members. Plaintiff has retained counsel with substantial experience in litigating complex cases, including class actions. Both Plaintiff and its counsel will vigorously prosecute this action on behalf of the Class and have the financial ability to do so. Neither Plaintiff nor counsel has any interest adverse to other Class Members.

61.    Plaintiff is informed and believes that Defendants keep extensive computerized records of their loan applications through, *inter alia*, computerized loan application systems, and Federally-mandated record-keeping practices. Defendants have one or more databases through which all of the Applicants may be identified and ascertained, and it maintains contact information, including email and mailing addresses. From this information, the existence of the Class Members (i.e., the PPP Agent for the Applicant) can be determined, and thereafter, a notice of this action can be disseminated in accordance with due process requirements.

## V.  CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### Declaratory Relief

*(On Behalf of the Class Against All Defendants)*

62.    Plaintiff hereby incorporates by reference the foregoing allegations as if fully set forth herein.

63.    Plaintiff asserts this cause of action on behalf of itself and other Class Members.

64.     Plaintiff assisted its clients with the application process. Defendants failed to pay Agent Fees owed to Plaintiff as required by the SBA Regulations. Instead, they kept all of the origination and processing fees for themselves, in direct violation of the SBA Regulations.

65.     An actual controversy has arisen between Plaintiff and Defendants as to the Agent Fees owed to Plaintiff by Defendants. Upon information and belief, Defendants either deny that any Agent Fees are owed to Plaintiff or claim that only a fraction of the proper Agent Fees are owed.

66.     Plaintiff and the Class Members seek a declaration in accordance with SBA Regulations that that Defendants owe the Agent Fees to be paid out of the administrative fees paid to all Defendants, and that the collective Agent Fees should be deposited into a mutually agreeable fund or funds, within 60 days, to be distributed to the designee/Agent of each recipient of a PPP loan.

## SECOND CAUSE OF ACTION
### Unjust Enrichment

*(On Behalf of the Class Against All Defendants)*

67.     Plaintiff hereby incorporates by reference the foregoing allegations as if fully set forth herein.

68.     Plaintiff asserts this cause of action on behalf of itself and other Class Members.

69.     Plaintiff and Defendants did not have a legal contract but the Plaintiff and Class Members operated under the assumption that Defendants would follow the CARES Act and SBA Regulations and remit payment of the PPP Agent Fees as required by law.  Defendants held themselves out as offering PPP loans under the CARES Act and SBA Regulations and Plaintiff and Class Members were induced and encouraged to act as Agents for Defendants' loans.  Plaintiff and Class Members reasonably expected and relied on Defendant operating within the law

governing the loans requiring payment of the PPP Agent Fees.

70.     Plaintiff and Class Members conferred a benefit upon Defendants by serving as the Agent for the small businesses applying for the PPP loans to be lent by the Defendants and by facilitating the loan process between Lenders and applicants as required by the SBA Regulations. Specifically, Plaintiff's and Class Members' assistance in preparing the PPP applications saved Defendants' from doing additional work that was required to gain approval and funding of the subject PPP loans, thereby benefiting them.

71.     Defendants have been, and continue to be unjustly enriched, to the detriment and at the expense of the Class Members as a result of Defendants' wrongful withholding of Agent Fees owed to Plaintiff and the Class.

72.     Defendants have unjustly benefitted through the unlawful and wrongful collection of money from the Federal Government through the SBA funding PPP loan applications and continue to benefit to the detriment and at the expense of Plaintiff and Class Members by failing to remit that portion of the money collected that belongs to Plaintiff and Class members in the form of PPP Agent Fees.

73.      Under the definition of an "agent" under the PPP, each PPP loan issued by the Defendants presumably had an agent.  Defendants are aware of this given their requirement to adhere to all SBA regulations related to PPP loans.

74.     Accordingly, Defendants should not be allowed to retain the proceeds from the benefits conferred upon it by Plaintiff.   Equity requires that the Defendants remit the PPP Agent Fees to Plaintiff and Class Members and that they be compensated for the benefit conferred on the Defendants by Plaintiff and Class Members.

75.     Therefore, Plaintiff seeks disgorgement of Defendants' unjustly acquired profits

and other monetary benefits resulting from Defendants' unlawful conduct, and seek restitution for the benefit of the Plaintiff and Class Members, in a manner to be determined by the Court.

### THIRD CAUSE OF ACTION
### Conversion

*(On Behalf of the Class Against All Defendants)*

76.     Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

77.     Plaintiff asserts this cause of action on behalf of itself and other Class Members.

78.     Plaintiff gained title in the property and/or the legal right of possession to the PPP Agent Fees (as identified in the Table 1 above) upon approval and funding of the PPP loan, based on their assistance to their clients in the loan application process, as Agents.

79.     Defendants without legal claim, authorization, or approval appropriated, assumed, and exercised dominion over, the Plaintiff's and Class Members' PPP Agent Fees that are specifically set forth in Table 1 above.   Defendants continue to have actual possession of the PPP Agent Fees.   That specific money was transferred to Defendants by the U.S. Government and belongs to Plaintiff, who has title in it

80.     Plaintiff has demanded the return of their Agent Fees, which Defendants have not done, or have failed to do (Cadence and Newton), or Defendants have publicly stated that they intent to retain the Agent Fees (OZK).

81.     Defendants converted Plaintiff's property for their own use and used Plaintiff's property to their own benefit and enrichment. Defendants' actions with respect to the PPP Fees are hostile to Plaintiff and Class Members ownership rights in the PPP Agent Fees and Defendants' interference with Plaintiff's and Class Members' dominion and ownership over the PPP Agent Fees has proximately damaged Plaintiff and Class Members.

82.     In the alternative, Defendants in their capacity as trustees and/or bailees of Plaintiff's Agent Fees have not, or have refused to, surrender or remit the Agent Fees to Plaintiff. The PPP Agent Fees rightfully and lawfully belong to Plaintiff and the Class Members

83.     Accordingly, Defendants are liable to Plaintiff for the tort of conversion.

84.     As a direct and proximate result of Defendants' actions, Plaintiff has suffered financial injury in an amount to be proven at trial.

85.     Defendants have acted in bad faith and have caused Plaintiff unnecessary trouble and expense by failing to abide by the rule of law, including the CARES Act and SBA Regulations requiring payment of the PPP Agent Fees. Accordingly, pursuant to O.C.G.A. § 13-6-11, Plaintiff is entitled to recovery of their litigation expenses, including but not limited to their reasonable attorneys' fees.

86.     Defendants' actions show willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care, which would raise the presumption of conscious indifference to consequences, entitling Plaintiff to an award of punitive damages.

### FOURTH CAUSE OF ACTION
### Quantum Meruit

*(On Behalf of the Class Against All Defendants)*

87.     Plaintiff incorporate by reference the foregoing allegations as if fully set forth herein.

88.     Plaintiff asserts this cause of action on behalf of itself and other Class Members.

89.     Plaintiff and Class Members performed valuable service for the Defendants, including but not limited to, serving as the Agents for the small businesses applying for the PPP loans to be lent by the Defendants and by facilitating the loan process between Lenders and applicants as required and encouraged by the SBA Regulations.

90.     Plaintiff, in fact, expected that Defendants would pay them the Agent Fees for the costs and services incurred in preparing and submitted the loan applications upon approval or at least funding of the loan funding of each of their clients' loans under the CARES Act and PPP, as required by the SBA Regulations.  Plaintiff and Class Members operated under the assumption that Defendants would follow the CARES Act and SBA Regulations and remit payment of the PPP Agent Fees as required by law.  Defendants held themselves out as offering PPP loans under the CARES Act and SBA Regulations and Plaintiff and Class Members were induced and encouraged to act as Agents for Defendants' loans.  Plaintiff and Class Members reasonably expected and relied on Defendant operating within the law governing the loans requiring payment of the PPP Agent Fees.

91.     The Defendants requested the assistance of Plaintiff, or knowingly accepted Plaintiff's and Class Members service, including but not limited to, working with the Agents during the application process. Plaintiff's and Class Members' assistance in preparing the PPP applications saved Defendants' from doing additional work that was required to gain approval and funding of the subject PPP loans, thereby benefiting them.

92.     Defendants' receipt and retention of the Agent Fees without compensating Plaintiff and Class Members would be unjust and contrary to law, including the CARES Act, PPP, and SBA Regulations.

93.     The Plaintiff is thus entitled to recover from Defendants the Agent Fees that are due to them under the law, including the CARES Act, PPP, and SBA Regulations.

**FIFTH CAUSE OF ACTION**
**Breach of Contract-Third Party Beneficiary**

*(On Behalf of the Class Against All Defendants)*

94.     Plaintiff incorporate by reference the foregoing allegations as if fully set forth herein.

95.     Based on information and belief, Defendants entered into an agreement with the SBA in connection with the loans funded in the PPP.   The 1102 Lender Agreement Defendants each were required to sign and submit specifies repeatedly that it pertains to loans made under the PPP and its implementing regulations and states that "Lender certifies that it is in compliance and will maintain compliance with all applicable requirements of the Paycheck Protection Program, and PPP Loan Program Requirements."  The Lender Agreement is "subject to" the "PPP Loan Program Requirements."

96.     The agreements required that Defendants would adhere to all PPP rules and regulations and incorporate these requirements by reference. Defendants and the SBA understood that agents involved in the preparation and submission of PPP loan applications would need to be compensated.

97.     The SBA's PPP regulations specifically require that PPP lenders pay the fees of any "agent" that assists with the PPP loan application process, within the limits.

98.     Defendants understood that Plaintiff and the Class were intended beneficiaries in this agreement. Nevertheless, Defendants have refused to live up to their end of the bargain, and have uniformly refused to pay agent fees to Plaintiff and the Class.

99.     By refusing to pay agent fees in accordance with SBA regulations, Defendants are violating the terms of their agreement, thereby damaging Plaintiff and the Class. Plaintiff and the Class thus ask this Court to award them damages sufficient to make them whole, and compensate them for work they did in preparing clients' PPP loan application for loans that were funded, consequential damages, and all other damages available at law.

## SIXTH CAUSE OF ACTION
### Money Had and Received

*(On Behalf of the Class Against All Defendants)*

100.     Plaintiff hereby incorporates by reference the foregoing allegations as if fully set forth herein.

101.     Defendants have received money of the Plaintiff (the Agent Fees) that in equity and good conscience he should not be permitted to keep;

102.     Plaintiff has demanded payment of the Agent Fees that Defendants received and such demand has been refused and/or additional prerequisites have been imposed on the Plaintiff before it can receive the Agent Fees to which it is entitled (Cadence and Newton), and/or Defendants contended that they are not obligated to pay the Agent Fees (OZK).   Defendants agreed to abide by all the regulations governing PPP loans, thus promising to pay Agent Fees.

103.     Nevertheless, Defendants refused to pay Plaintiff and the Class Members the authorized Agent Fees.

104.     As a direct and proximate result, Plaintiff and the Class Members have suffered damages in the form of the deprivation of their Agent Fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the Class, prays for the following relief:

1.     For an Order certifying the Class as defined above, appointing Plaintiff as Class representative for the Class, and appointing Plaintiff's counsel as Class counsel for the Class;

2.     For an Order declaring Defendants' actions to be unlawful, including an order in

favor of the Plaintiff on all counts;

3.      For a declaration in accordance with SBA guidance that the Agent Fees paid to all

Defendants, should be deposited into a mutually agreeable fund or funds, within 60

days, to be distributed to the designee/Agent of each recipient of a PPP loan;

4.      For equitable relief to Plaintiff and Class Members;

5.      For an award of all recoverable compensatory, statutory, and other damages

sustained by Plaintiff and Class Members, and equitable relief including

disgorgement, unjust enrichment, and all other available relief under applicable

law;

6.      For an award of punitive damages pursuant to applicable law;

7.      For reasonable attorneys' fees and expenses as permitted by applicable statutes and

law;

8.      For costs related to bringing this action;

9.      For pre and post-judgment interest as allowed by law; and

10.     Such further relief at law or in equity that this Court deems just and proper.

## VII.   <u>DEMAND FOR JURY TRIAL</u>

Plaintiff hereby demands a trial of its claims by a jury to the extent authorized by law.

DATED:  September 14, 2020                    */s/ Travis E. Lynch*
                                             Travis E. Lynch
                                                    GA Bar No.:  162373
                                                    tlynch@hgdlawfirm.com
                                             **HENINGER GARRISON DAVIS, LLC**
                                             3621 Vinings Slope, Suite 4320
                                             Atlanta, GA 30339
                                             Telephone: 404-996-0867
                                             Facsimile: 205-326-3332

                                             James F. McDonough, III
                                                    GA Bar No.:  117088
                                                    jmcdonough@hgdlawfirm.com
                                             Jonathan R. Miller
                                                    GA Bar No.: 507179
                                                    jmiller@hgdlawfirm.com
                                             **HENINGER GARRISON DAVIS, LLC**
                                             3621 Vinings Slope, Suite 4320
                                             Atlanta, GA 30339
                                             Telephone: 404-996-0869; -0863
                                             Facsimile: 205-380-8076, 205-547-5506
                                             *Pro Hac Vice Application in Process*

                                             W. Lewis Garrison, Jr.
                                                    GA Bar No.: 286815
                                                    lewis@hgdlawfirm.com
                                             **HENINGER GARTRISON DAVIS, LLC**
                                             2224 1st Avenue North
                                             Birmingham, Alabama 35203
                                             Telephone:      (205) 326-3336
                                             Facsimile:      (205) 326-3332
                                             *Pro Hac Vice Application in Process*

                                             **GERAGOS & GERAGOS, APC**

                                             Mark J. Geragos
                                             Ben J. Meiselas
                                             Matthew M. Hoesly
                                             644 South Figueroa Street
                                             Los Angeles, California 90017
                                             Telephone: (213) 625-3900
                                             Facsimile: (213) 232-3255
                                             *Pro Hac Vice Application in Process*

**GRAYLAW GROUP, INC.**

Michael E. Adler
26500 Agoura Road, #102-127
Calabasas, CA 91302
Telephone: (818) 532-2833
Facsimile: (818) 532-2834
*Pro Hac Vice Application in Process*

**DHILLON LAW GROUP INC.**

Harmeet K. Dhillon
Nitoj P. Singh
177 Post St., Suite 700
San Francisco, CA 94108
Telephone: (415) 433-1700
Facsimile: (415) 520-6593
*Pro Hac Vice Application in Process*

*Attorneys for Plaintiff and the
Proposed Class*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that I caused the foregoing document to be electronically-filed with the Clerk of Court using this Court's CM/ECF system, which caused it to be served this day on all counsel of record who have consented to receive electronic service.

Dated: September 14, 2020                    */s/ Travis E. Lynch*
                                             Travis E. Lynch
                                             Bar No. 162373, GA